STATE OF MAINE
YORK, ss

LAWRENCE ROLAND OUELLETTE, )
of Biddeford, York County, Maine, )
)
Plaintiff, )
)
v. )
)
NORMAN GAUDETTE of Biddeford, )
York County, Maine, )
)
In his Individual Capacity )
)
ROGER BEAUPRE, of Biddeford, York )
County, Maine, )
)
In his Official Capacity as Chief of )
Police for the Biddeford Police )
Department and in his Individual )
Capacity, )
)
and )
)
CITY OF BIDDEFORD )
a municipality in the state of Maine, )
)
Defendants )
)

SUPERIOR COURT
CIVIL ACTION
DOCKET NO.:  CV-15-241

COMPLAINT
(WITH DEMAND FOR JURY TRIAL)

NOW COMES Plaintiff and hereby complains against Defendants as follows:

PRELIMINARY STATEMENT

1.    Lawrence "Larry" Ouellette was sexually assaulted by Biddeford Police

Department Officer Norman Gaudette in the 1980s when Ouellette was a minor.  Norman

Gaudette used his power and authority as a law enforcement officer to secure Larry Ouellette's

trust to sexually abuse him and to ensure Ouellette's silence about his abuses.  Chief Roger

Beaupre was Chief of the Biddeford Police Department before, during, and after Larry Ouellette

was sexually abused.  Chief Roger Beaupre was given information prior to Larry Ouellette's

1



abuse such that he was aware of and/or should have been aware that Norman Gaudette and at least one other Biddeford Police Officer had been and were sexually abusing young boys, including Larry Ouellette. As Chief, Roger Beaupre turned a blind eye and failed to prevent this abuse. Chief Roger Beaupre's failure to act meant that Norman Gaudette was able to sexually assault Larry Ouellette. Larry Ouellette brings this action against Norman Gaudette, Chief Roger Beaupre, and the City of Biddeford pursuant to 42 U.S.C. § 1983.

## PARTIES

2.      Plaintiff Lawrene "Larry" Ouellette ("Ouellette") is an individual residing in Biddeford, Maine.

3.      At all times relevant to this Complaint, Ouellette was a minor residing in Biddeford, Maine.

4.      Defendant Norman Gaudette ("Officer Gaudette") is an individual residing in Biddeford, Maine.

5.      At all times relevant to this Complaint, Officer Gaudette was a police officer with the Biddeford Police Department ("BPD") and was acting under color of state law as a BPD police officer employed by BPD and the City of Biddeford.

6.      Defendant Roger Beaupre ("Chief Beaupre") is the Chief of Police for the BPD and was the Chief of Police for the BPD at all times relevant to this Complaint and was acting under color of state law as the Chief of BPD.

7.      Defendant Chief Beaupre is and was the final policy maker for BPD.

8.      Defendant City of Biddeford is a municipality in the state of Maine.

9.      Defendants Roger Beaupre, in his Official Capacity as Chief of BPD, and City of Biddeford are collectively referred to as "Municipal Defendants.

2

## STATEMENT OF FACTS

10.     Officer Gaudette approached Ouellette around the time that Ouellette was 15 years old.

11.     Officer Gaudette approached Ouellette and told him that he looked like he could use some new clothes.

12.     Officer Gaudette also offered to find Ouellette a job cleaning a local bank.

13.     Officer Gaudette approached Ouellette and made these statements when he was on duty in his police cruiser.

14.     Ouellette, then a 15 year old boy, trusted Officer Gaudette given his position of authority and trust as BPD officer.

15.     Once Ouellette began working as a cleaner at the bank, he would be visited by Officer Gaudette who would often wrestle with him.

16.     Officer Gaudette also opened an account for Ouellette at a local mens' clothing store in Biddeford so Ouellette could purchase items that he could not afford.

17.     About a year after Officer Gaudette first made contact with Ouellette, he took Ouellette to a camper on a piece of property he then owned in Naples, Maine.

18.     Officer Gaudette then proceeded to furnish liquor to Ouellete and got him drunk in the camper.

19.     After Officer Gaudette got Ouellette drunk, he then proceeded to sexually assault him.

20.     Officer Gaudette sexually assaulted Ouellette on multiple subsequent occasions as well.

21.     Officer Gaudette used his power and authority as a BPD officer to earn Ouellette's trust, sexually assault him, and keep him from disclosing this first and subsequent sexual assaults.

22.     Prior to the time that Officer Gaudette sexually assaulted Ouellette, information had been conveyed to Chief Beaupre that Officer Gaudette and at least one other BPD officer had committed sexual assaults against minors in Biddeford. Additionally, among other actions, Officer Gaudette had been engaged in other sexual assaults against minors in Biddeford and Chief Beaupre knew and/or should have known that Officer Gaudette was a sexually fixated pedophile, was dangerous to young men and should not be in a position as an officer of the BPD.

23.     Chief Beaupre knew and/or should have known that BPD officers were sexually assaulting minors based on the information that he was given, including but not limited to Officer Gaudette's sexual abuse of minors.

24.     Despite receiving this information, Chief Beaupre took no steps to protect Ouellette or other minors in Biddeford from the sexual assaults. Additionally Chief Beaupre engaged in a pattern of altering BPD internal affairs policies and establishing BPD policies that provided him with the opportunity to control and manipulate BPD policies to allow Officer Gaudette to remain in his position during and after sexual abuse allegations were made against Officer Gaudette prior to the time that he sexually assaulted Ouellette. Chief Beaupre also failed to provide mandatory notification to the then-State of Maine Department of Human Services ("DHS"), despite his obligation to do so, of the sexual abuse by Officer Gaudette. Had Chief Beaupre done so, then DHS would have investigated Officer Gaudette and that independent investigation would have shown, prior to Ouellette's abuse by Officer Gaudette, that Officer Gaudette had abused minor boys through his position as an officer of the BPD. Such an

4

investigation would have resulted in the separation of Officer Gaudette from the BPD prior to the time that Officer Gaudette, using his position as an officer of the BPD, molested Ouellette.

## CLAIMS FOR RELIEF

### COUNT I
### 42 U.S.C. § 1983
### (Officer Gaudette in his Individual Capacity)

25.    Ouellette repeats and realleges Paragraphs 1 through 24 as if set forth fully herein.

26.    At all times relevant to this Complaint, Ouellette had a Constitutional right of liberty to bodily integrity, including but not limited to a freedom from sexual abuse by BPD police officers.

27.    Officer Gaudette was acting under color of state law when he established contact and a personal relationship of trust with Gaudette.

28.    Officer Gaudette was acting under color of state law when he sexually assaulted Ouellette on multiple occasions.

29.    Officer Gaudette's sexual assaults were a direct deprivation of Ouellette's constitutional rights to liberty of bodily integrity and freedom from sexual assault.

30.    As a result of Officer Gaudette's actions, Ouellette suffered damages, including but not limited to severe psychological damages, post-traumatic stress disorder, pain, suffering, humiliation, embarrassment, lost wages and permanent impairment.

### COUNT II
### 42 U.S.C. § 1983
### (Chief Beaupre in his Individual Capacity)

31.    Ouellette repeats and realleges Paragraphs 1 through 30 as if set forth fully herein.

32.    At all times relevant to this Complaint, Ouellette had a Constitutional right of liberty to bodily integrity, including but not limited to a freedom from sexual abuse by BPD police officers.

33.     Officer Gaudette was a subordinate to Chief Beaupre at all times relevant to this Complaint.

34.     Officer Gaudette violated Ouellette's Constitutional rights, as set forth more fully above.

35.     Chief Beaupre's failure to investigate complaints against Gaudette and/or supervise Gaudette's misconduct constituted supervisory encouragement, condonation or acquiescence amounting to deliberate indifference.

36.     Chief Beaupre's actions and/or inactions described in the foregoing paragraphs were affirmatively linked to Gaudette's violation of Ouellette's constitutional rights.

37.     Ouellette did not know and had no reason to know that the deliberately indifferent actions and/or omissions of Chief Beaupre were the cause of his injuries and the violations of his Constitutional rights.

38.     As a result of Chief Beaupre's actions and inactions Ouellette suffered damages, including but not limited to severe psychological damages, post-traumatic stress disorder, pain, suffering, humiliation, embarrassment, lost wages and permanent impairment.

## COUNT III
## 42 U.S.C. § 1983
## (Municipal Defendants)

39.     Ouellette repeats and realleges Paragraphs 1 through 38 as if set forth fully herein.

40.     At all times relevant to this Complaint, Ouellette had a Constitutional right of liberty to bodily integrity, including but not limited to a freedom from sexual abuse by BPD police officers.

41.     With deliberate indifference to the rights of minor citizens to be free from invasions of bodily integrity and sexual assault by police, the Municipal Defendants encouraged, tolerated,

6

ratified, and acquiesced to a dangerous environment of sexual assaults against underage males by BPD officers by:

  a. failing to conduct sufficient training or supervision;

  b. failing to adequately punish acts of sexual abuse; and,

  d. failing to properly or neutrally investigate citizen complaints of sexual abuse of minors;

42.  Officer Gaudette and at least one other BPD officer engaged in a continuing, widespread, and persistent pattern of conduct in violation of citizens' constitutional rights to bodily integrity and freedom from sexual assault.

43.  At all times relevant to this Complaint, it was the longstanding widespread deliberately indifferent custom, habit, practice and/or policy of the Municipal Defendants to permit BPD officers to sexually assault minors, to fail to supervise BPD officers who were sexually assaulting minors, and to fail to investigate reports of sexual assaults by BPD officers knowing that these members of law enforcement posed a significant risk to the public.

44.  These deliberately indifferent customs and/or tacit authorizations of the Municipal Defendants were causes of the injury to Ouellette's constitutional rights to liberty of bodily integrity and freedom from sexual assault by BPD officers.

45.  Ouellette did not know and had no reason to know that the deliberately indifferent actions and/or omissions of the Municipal Defendants were the cause of his injuries and the violations of his Constitutional rights.

46.  Ouellette was injured by the Municipal Defendants' deliberate indifference to the violations of his constitutional rights.

47.  As a result of the Municipal Defendants' actions and inactions Ouellette suffered damages, including but not limited to severe psychological damages, post-traumatic stress disorder, pain, suffering, humiliation, embarrassment, lost wages and permanent impairment.

## COUNT IV
## NEGLIGENT SUPERVISION
### (Municipal Defendants)

48.     Ouellette repeats and realleges Paragraphs 1 through 47 as if set forth fully herein.

49.     At all times relevant to this Complaint, a special relationship existed between the Municipal Defendants, who were trusted and empowered to protect the minor citizens of Biddeford, including Ouellette, who are more vulnerable than adults.

50.     There was a disparity of power and influence between the Municipal Defendants and Ouellette.

51.     As a result of these circumstances, there was a reasonable basis for Ouellette to place trust and confidence in the Municipal Defendants.

52.     Gaudette's extensive and public involvement in the life of Ouellette, including but not limited to his purchasing of clothing for Ouellette, his public interactions with Ouellette at a job he had helped Ouellette obtain, and his permission for Ouellette to live at his home when Ouellette had an argument with his mother on at least one occasion, was known and/or should have been known to the Municipal Defendants as a reason for Ouellette to place great trust and confidence in the Municipal Defendants.

53.     Ouellette in fact placed trust and confidence in the Municipal Defendants as a result of this special relationship.

54.     The Municipal Defendants knew or should have known that Officer Gaudette posed a substantial risk of harm to Ouellette.

55.     Under these circumstances, the Municipal Defendants owed a duty to protect Ouellette.

8

56.    The Municipal Defendants failed to exercise their duty of care to protect Ouellette.

57.    The Municipal Defendants' failure to exercise their duty of care caused injuries to Ouellette.

58.    As a result of the Municipal Defendants' breach of duty, Ouellette suffered damages, including but not limited to severe psychological damages, post-traumatic stress disorder, pain, suffering, humiliation, embarrassment, lost wages and permanent impairment.

WHEREFORE, Plaintiff requests this Court order the following:

1.    Compensatory damages against each Defendant jointly and severally on all counts.

2.    Punitive damages against Defendants Norman Gaudette and Roger Beaupre jointly and severally.

3.    Punitive damages against the Municipal Defendants on Count IV.

4.    Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1983.

5.    Any other relief this Court deems just and proper.

## JURY DEMAND

Ouellette demands a trial by jury on all counts of his Complaint.

Date:  10/29/15

WALTER F. MCKEE, ESQ.
Bar No. 7848
McKee Billings, LLC, P.A.
133 State Street
Augusta, ME.  04330
(207) 620-8294

Date:  10/29/15

JAMES A. BILLINGS, ESQ.
Bar No. 9353

Date:  10/29/15

MATTHEW D. MORGAN, ESQ.
Bar No. 5044

9