UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| LAWRENCE ROLAND OUELLETTE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 2:16-cv-00053-LEW |
| NORMAN GAUDETTE, ROGER BEAUPRE, and THE CITY OF BIDDEFORD, | ) ) ) ) ) | |
| Defendants | ) | |

# ORDER ON DEFENDANTS ROGER BEAUPRE AND CITY OF BIDDEFORD'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Lawrence Ouellette alleges Defendant Norman Gaudette sexually assaulted him in 1987 and 1988, when Ouellette was a minor and Gaudette was a police officer employed by the City of Biddeford. Mr. Ouellette also alleges that Roger Beaupre, the Chief of the Biddeford Police Department, was deliberately indifferent to the risk posed by Officer Gaudette and failed to take appropriate action to prevent the abuse. Plaintiff filed this civil action against Mr. Gaudette, Chief Beaupre, and the City of Biddeford, asserting violations of Plaintiff's civil rights under 42 U.S.C. § 1983 and related state laws. Am. Compl. (ECF No. 22).

Defendants Roger Beaupre and City of Biddeford now move for summary judgment on Plaintiff's § 1983 claims. City Defendants' Motion for Summary Judgment (ECF No. 135). The motion is **granted** for the reasons set forth herein.

## SUMMARY JUDGMENT FACTS

Defendant Norman Gaudette joined the Biddeford Police Department in 1973. He remained a member of the Biddeford Police Department until 2000. Plaintiff Lawrence Ouellette was born in June, 1971 and was approximately fifteen or sixteen when he first met Gaudette, while walking home from school. Gaudette called out to Ouellette from his unmarked vehicle, introduced himself as a captain of the Biddeford Police Department, and gave Oullette a ride home. During this interaction, Gaudette offered Ouellette a job with his commercial cleaning business. In the late summer or early fall of 1987, Ouellette and Gaudette engaged in sexual activity for the first time at a commercial establishment where they were providing cleaning services. That was the start of a series of sexual encounters, including encounters while Gaudette was on duty, through the fall of 1988.

In approximately 1989, Ouellette informed Biddeford Police Department Detective Terry Davis that Gaudette had sexually assaulted him. Davis encouraged Ouellette to report and pursue the matter. Soon thereafter, Ouellette met with Detective Davis and a second Biddeford Police Department Detective, Richard Gagne, and recounted the sexual abuse which took place when he was 16. Detective Gagne then informed Biddeford Chief of Police Roger Beaupre, who instructed Detective Gagne to refer the matter to the York County District Attorney's Office. York County D.A. Michael Cantara spoke with and obtained a first-hand account from Ouellette.

Ouellette was not the only individual to report sexual misconduct by Gaudette to the Biddeford Police Department.[1] In the early 1980s, another individual reported to Biddeford Police Detectives Gagne and Lambert, as well as Biddeford Police Officer Fisk, that Gaudette had engaged in inappropriate touching. In the mid-1980s, yet another individual reported being sexually assaulted by Gaudette. In October 1990, an investigator with the Maine Attorney General's Office, Michael Pulire, interviewed Ouellette. According to Pulire, his investigation included interviews with six to eight persons who alleged they were victims of Gaudette. Pulire also met with Chief Beaupre and informed him of the investigation. Following the meeting, Beaupre placed Gaudette on administrative leave pending the outcome of the investigation.

In 2015, Ouellette became aware of social media posts regarding allegations of sexual misconduct by Gaudette (as well as other Biddeford Police Officers). Of significance to Ouellette was a letter written by Robert Devou, a former detective with the Biddeford Police Department, in which Devou detailed allegations of sexual abuse by Defendant Gaudette that pre-dated Gaudette's abuse of Ouellette. It was then that Ouellette realized that Chief Beaupre had been aware of at least one claim of sexual misconduct against Gaudette prior to the abuse he endured.

---

[1] The accusations of sexual misconduct were not directed solely at Defendant Gaudette. In his role as Biddeford Police Department Chief, Chief Beaupre has received allegations of sexual abuse against three BPD officers: Defendant Gaudette, Stephen Dodd, and Robert Devou.

3

On October 29, 2015, Ouellette filed this civil action. In 2016, a search of the Biddeford Police Department's records for documents related to allegations of sexual assault against Gaudette returned no results.

## DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As cautioned by the Supreme Court, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A material fact is one that has the potential to determine the outcome of the litigation. *Id.* at 248; *Oahn Nguyen Chung v. StudentCity.com, Inc.*, 854 F.3d 97, 101 (1st Cir. 2017). To raise a genuine issue of material fact, Plaintiff, as the party opposing the summary judgment motion, must demonstrate that the record contains evidence that would permit the finder of fact to resolve the material issues in his favor. *See Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) ("Unless the party opposing a motion for summary judgment can identify a genuine issue as to a material fact, the motion may end the case.").

Defendants Roger Beaupre and the City of Biddeford seek summary judgment against Plaintiff's claims. City Defendants' Motion for Summary Judgment (ECF No. 135). Principally, they contend Plaintiff's action is barred because it was filed outside the applicable statute of limitations by more than 20 years and Plaintiff is not entitled to a deferred accrual date. *Id.* at 1-6. In response to this argument, Plaintiff asserts he did not have actual or

constructive notice of his claim against the City of Biddeford or Chief Beaupre until he discovered Detective Devou's statements on social media in 2015. Plaintiff's Response at 6-7 (ECF No. 140).

The federal Civil Rights Act, 42 U.S.C. § 1983, authorizes persons deprived of "any rights, privileges, or immunities secured by the Constitution and laws" through state action, to pursue legal redress by means of a civil suit against appropriate state officials. *McKenney v. Mangino*, 873 F.3d 75, 79 (1st Cir. 2017). "In bringing suit, however, plaintiffs must act within the prescribed statute of limitations; otherwise, the defendant may use the untimely filing as an affirmative defense which, if validated, precludes the court from granting the requested relief." *Cao v. Puerto Rico*, 525 F.3d 112, 115 (1st Cir. 2008).

In Maine, cases brought under section 1983 are subject to the six-year statute of limitations set forth in 14 M.R.S. § 752. *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (holding that the state statute of limitation for personal injury torts applies in the context of federal actions under section 1983); *Small v. Inhabitants of Belfast*, 796 F.2d 544, 546 (1st Cir. 1986). Although federal courts borrow the statute of limitations period from state law, federal law governs the accrual date of the action. *Wallace*, 549 U.S. at 388. The accrual date, or the point in time at which the statute of limitations begins to run, is "when the plaintiff knows, or has reason to know, of the injury on which the action is based," *Rivera-Muriente v. Agosto-Alicea*, 959 F.2d 349, 353 (1st Cir. 1992), assuming that the injury affords "the basis for an action" because the party responsible for the injury is apparent from the face of things. *Randall v. Laconia, NH*, 679 F.3d 1, 7 (1st Cir. 2012) (quoting *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 646 (2010)).

5

But when the injury or the identity of the responsible party is not apparent to the person harmed, an action will accrue for limitation purposes only "when the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the factual basis for the cause of action." *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002) (citing *United States v. Kubrick*, 444 U.S. 111, 121-24 (1979)); *see also Randall*, 679 F.3d at 7. The discovery rule incorporates an objective standard, *Sanchez v. United States*, 740 F.3d 47, 52 (1st Cir. 2014), and requires the plaintiff to demonstrate that the foundational facts underlying the claim were "'inherently unknowable' at the time of the injury."[2] *Attallah v. United States*, 955 F.2d 776, 780 (1st Cir. 1992) (quoting *Levin v. Berley*, 728 F.2d 551, 553 (1st Cir. 1984)). Facts are "inherently unknowable" when they are "incapable of detection by the wronged party through the exercise of reasonable diligence." *Geo. Knight & Co. v. Watson Wyatt & Co.*, 170 F.3d 210, 213 (1st Cir. 1999) (quoting *Tagliente v. Himmer*, 949 F.2d 1, 5 (1st Cir. 1991)). Thus, once a plaintiff either knows he has been injured and "understand[s] the 'causal connection between the government and h[is] injury'" or "reasonably should have known or discovered [the factual basis for his claim] in the exercise of due diligence," that plaintiff "must act expeditiously or risk abdicating any legal remedy." *Donahue v. United States*, 634 F.3d 615, 623, 624 (1st Cir. 2011) (quoting *Callahan v. United States*, 426 F.3d 444, 451 (1st Cir. 2005)). Due diligence in this context imposes a duty on the injured party to investigate, including by seeking advice from a lawyer about potential claims. *Gonzalez*, 284 F.3d at 289.

---

[2] The federal discovery rule allows courts to be "slightly more forgiving" in cases when "the identity of the individual(s) responsible for an injury [is] less evident" and the circumstances that gave rise to the injury did not give the plaintiff "reason to suspect governmental involvement." *Skwira v. United States*, 344 F.3d 64, 77 (1st Cir. 2003).

When considering whether a claim was inherently unknowable, a court will impute to the plaintiff an awareness of any knowledge that would have been uncovered through reasonable inquiry. *Skwira v. United States*, 344 F.3d 64, 77 (1st Cir. 2003).

Because the statute of limitation is an affirmative defense, it is Defendants' initial burden to put forward evidence that is conclusive of the issue. *Torres Vargas v. Santiago Cummings*, 149 F.3d 29, 35-36 (1st Cir. 1998). If they do so, the burden then shifts to Plaintiff to establish the statute of limitation does not apply. *Asociacion de Suscripcion Conjunta del Seguro de Responsabilidad Obligatorio v. Juarbe-Jimenez*, 659 F.3d 42, 50 n.10 (1st Cir. 2011). And, importantly, where the opposition to the statute of limitation defense rests on the discovery rule, the burden of demonstrating the statute was tolled falls on the plaintiff. *Rivera-Carrasquillo v. Centro Ecuestre Madrigal, Inc.*, 812 F.3d 213, 216-17 (1st Cir. 2016); *Geo. Knight & Co.,* 170 F.3d at 213.

When a plaintiff alleges harms inflicted before he or she reached the age of majority, federal courts will borrow from state law tolling principles, and thus, in Maine, an action will not accrue before the plaintiff reaches the age of majority. *Bd. of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 483-84 (1980); 14 M.R.S. § 853. Plaintiff reached the age of majority in June, 1989. Unless the discovery rule further tolls the statute of limitations, Plaintiff's action expired six years later, in 1995 – more than 20 years before he filed this action. These circumstances satisfy Defendants' initial burden of proof. The burden, therefore, shifts to Plaintiff to demonstrate that the statute of limitations was tolled.

Plaintiff asserts that even though he was aware of Gaudette's employment with the Biddeford Police from their very first interaction, he nevertheless "had no reason to believe

7

prior to 2015 that Chief Beaupre knew or had reason to know . . . of Gaudette's sexual abuse of minors and did nothing about it and/or covered it up." Pl.'s Resp. at 6 (ECF No. 140). He argues that facts relating to Chief Beaupre's potential involvement were not "generally available," a classification for some reason he limits to information available in "any news media, public records, or social media." He claims that this information was "hidden and w[as] not disclosed beyond the closed doors of the [police department]." *Id.* at 7. In response, Defendants assert Plaintiff "had reason to suspect that the City and Beaupre – Gaudette's employer and boss – might have played a role in his abuse" such that "he might have a claim against [them]." Motion at 3. They add that Plaintiff has not uncovered any information that was inherently incapable of detection by him through the exercise of reasonable diligence in the years leading up to this lawsuit. *Id.* at 4.

Plaintiff argues he is supported by *Donahue v. United States*. I disagree, but I find the case instructive for different reasons. In *Donahue*, the First Circuit applied the federal discovery rule to claims brought by the representatives of two individuals murdered at the behest of a mobster who, unbeknownst to his victims, was an FBI informant acting on confidential information leaked to him by corrupt FBI agents. *Donahue*, 634 F.3d at 616. Although the 'injury' was clear, because there was no reason for the plaintiffs to suspect or "understand the 'causal connection between the government and [the] injury,'" the First Circuit concluded that the plaintiffs' claims did not accrue on the date of the murders. *Id.* at 623, 625. Instead, the limitations period commenced upon the release of "generally available information" disclosed sixteen years after the murders, which information included testimony by the head of the FBI's organized crime unit who oversaw the informant and his FBI handler

8

and testified to their extensive wrongdoings, and which testimony garnered "publicity [that] spelled out in exquisite detail the facts needed for accrual." *Id.* at 625. Although the *Donahue* plaintiffs argued for a more lenient application of the discovery rule due, in part, to the "years of government evasion," the Court, nevertheless, refused to consider "whether the plaintiffs *actually* knew the information" contained in the widely-circulated reports and instead "charged [them] with knowing this information on or before" the date the information was released. *Id.* at 626 – 27. The court reasoned the media flurry provided the plaintiffs with "considerably more than a mere hunch, hint, suspicion, or rumor" regarding the government's involvement. *Id.* at 626.

Unlike in *Donahue*, in this case the defendant's abuse and official status were "open and obvious" to Plaintiff. Plaintiff not only knew he had been harmed by Gaudette, but also knew that Gaudette was employed by the Biddeford Police Department.[3] *Id.* at 625; *see Kubrick*, 444 U.S. at 122 ("The prospect is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury."). Plaintiff was in possession of at least enough information to seek legal advice, to set him on the government's trail, and make a claim within the limitations period, unlike the plaintiffs in *Donahue*. An

---

[3] As I recently concluded in the related matter of *Lauzon v. Dodd*:

> Like a patient who knows he has been harmed by a specific physician, Plaintiff knew he had been harmed, in a most horrible way, by a Biddeford Police Officer (whether or not [Gaudette] was acting under color of law) and could have been notified by an attorney of the potential of asserting claims against the City and Defendant Beaupre as well as the importance of engaging in reasonable investigation – if he had only asked. *Kubrick*, 444 U.S. at 122 ("If he does ask and if the defendant has failed to live up to minimum standards of medical proficiency, the odds are that a competent doctor will so inform the plaintiff.").

No. 2:16-CV-00051-LEW, 2019 WL 2996904, at *7 (D. Me. July 9, 2019).

9

"avalanche of publicity," *Donahue*, 634 F.3d at 625, was not required to alert Plaintiff to Defendant Gaudette's connection to the Biddeford Police Department and, by extension, to his potential claims against Defendant Gaudette's supervisor and employer. Plaintiff's Response reinforces this conclusion: "It is well-settled law that a law enforcement officer's illegal and unauthorized actions taken by virtue of the officer's authority under state law are actions taken 'under color of law' making municipal defendants potentially liable for those actions." Pl.'s Response at 9 (ECF No. 140). This would have been the advice given to Plaintiff upon consultation with a lawyer of reasonable competence, had he asked.

Contrary to the standard for which Plaintiff impliedly argues, under the federal discovery rule "a plaintiff is not entitled to wait until all of the facts in support of the claim are known." *Skwira*, 344 F.3d at 84 (Boudin, C.J., concurring); *see also Donahue*, 634 F.3d at 626 (emphasizing that "[u]nder the discovery rule . . . , irrefutable proof of a combination of wrongful conduct and government responsibility for that conduct is not essential"). Plaintiff's awareness of his abuser's affiliation with the Biddeford Police Department supplied Plaintiff with "enough information to lead a reasonable person in his position to seek advice about a possible claim" against Defendants Beaupre and the City of Biddeford.[4]   *See*

---

[4] When discussing the "diligence-discovery rule" (albeit within the context of a medical malpractice claim brought pursuant to the Federal Tort Claims Act), the Second Circuit instructed:

> A claim will accrue when the plaintiff knows, or should know, enough "to protect himself by seeking legal advice." [*Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998)] (internal quotation marks omitted). Once an injured party . . . knows enough to warrant consultation with counsel, and acts with diligence . . . to undertake such consultation, conscientious counsel will have ample time to protect the client's interest by investigating the case and determining whether, when, where, and against whom to bring suit.

*A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 140 (2d Cir. 2011). The court continued: "An accrual date that turns on when a plaintiff (or his lawyers) finally decides to take action, rather than when the plaintiff

*Skwira*, 344 F.3d at 84 ("[O]nce the plaintiff knows enough to provoke a reasonable person to inquire further, the plaintiff has the duty to investigate." (Boudin, C.J., concurring)). Had Plaintiff consulted an attorney, he would have learned of his potential legal rights and the importance of initiating an action within the applicable statute of limitations. *See Kubrick*, 444 U.S. at 122 ("There are others who can tell him if he has been wronged, and he need only ask.").

Plaintiff's contentions are further undermined by consideration of the "alternate component of the accrual calculus – the information that further inquiry would have revealed." *Donahue*, 634 F.3d at 625. Actual knowledge of the injury and its cause or the presence of generally available information regarding the injury and its cause is not the only quantum of knowledge that triggers the running of the statute of limitations. *Id.* at 623. Instead, accrual begins "when either the generally available information or the likely outcome of a reasonably diligent investigation that follows inquiry notice is sufficient to ground a reasonable belief that the plaintiff has been injured and that there is a causal nexus between the injury and some governmental conduct." *Id.* at 624. As Defendants argue, had Plaintiff pursued his claim with "reasonable diligence" in the early 1990s (for example, with the advice and assistance of an attorney), he likely would have discovered information as probative of the matter as what he is now able to discover almost 30 years later, including the reports concerning other allegations of sexual misconduct filed against then Officer Gaudette and

---

was sufficiently alerted to the appropriateness of seeking legal advice, would render the limitations period meaningless." *Id.* at 141-42.

information regarding the investigation and events leading to Gaudette's 1990 administrative leave.

"[T]he duty of investigation under the discovery rule is not a negligible one, especially where a plaintiff knows the essential facts underlying his claim." *Marrapese v. State of R.I.*, 749 F.2d 934, 943 (1st Cir. 1984). Here, for example, Plaintiff could have consulted an attorney, initiated a civil action against Gaudette, conducted discovery for records concerning any history of reports of similar conduct in the past, taken appropriate depositions and amended his complaint to pursue supervisory and municipal claims.[5] "Critically, when the plaintiff knows or should know enough to prompt a claim, he may not yet know enough to win the suit." *Skwira*, 344 F.3d at 84. Plaintiff "chose not to" make any efforts "to discover whether Chief Beaupre or the city had done anything wrong in handling the allegations against Officer Gaudette." Ouellette Dep. 150:1-10 (ECF No. 136-1).

I do not minimize the trauma caused by an incident such as the one described by Plaintiff. I am not "blam[ing]" Plaintiff for not bringing his case earlier. *See* Pl.'s Response at 9 (ECF No. 140). A judge applies the law as it stands. Federal judges do not decide cases on generalized notions of fairness when statutes control the resolution of a case. If the law is unpopular, that is a matter for lawmakers, not unelected judges. To avoid confusion about statutes of limitation and American civics, the First Circuit explains:

---

[5] Indeed, given the nature of the underlying claim, it is highly improbable that any Court would have granted a motion to dismiss municipal and supervisory liability claims had Plaintiff advanced those claims at the inception of a civil action within the limitations period. *See*, *e.g.*, *Leatherman v. Tarrant Cty. Narcotics Intel. And Coordination Unit*, 507 U.S. 163 (1993) (disavowing use of heightened pleading for municipal liability claims asserted under § 1983).

12

> [S]tatutes of limitation are designed to operate mechanically. They aspire to bring a sense of finality to events that occurred in the distant past and to afford defendants the comfort of knowing that stale claims cannot be pursued. *See Rakes* [*v. United States*, 442 F.3d 7, 20 (1st Cir. 2006)]. Their mechanical operation may at times have seemingly harsh consequences, but the amelioration of such consequences is a matter for Congress rather than for the courts. *See Skwira,* 344 F.3d at 86 (Boudin, C.J., concurring); *cf. Tasker v. DHL Ret. Sav. Plan,* 621 F.3d 34, 43 (1st Cir. 2010) (observing that courts are not free to decide cases on generalized notions of fairness but, where statutes are in play, must follow the path demarcated by the legislature).

*Donahue*, 634 F.3d at 629.

## CONCLUSION

For the foregoing reasons, Defendants Roger Beaupre and the City of Biddeford's Motion for Summary Judgment (ECF No. 135) is **GRANTED.** [6]

**SO ORDERED.**

Dated this 18th day of September, 2019.

                                                                        /s/ Lance E. Walker
                                                                          U.S. DISTRICT JUDGE

---

[6] Previously, when reviewing Defendants' motion to dismiss and Plaintiff's related motion to amend the complaint, Judge Hornby observed that Plaintiff "stipulate[d] to the dismissal of [his] state law claims against the Municipal Defendants for negligent supervision (Count IV of [his] Complaint[] and the Amended Complaint[])." Decision & Order, 4 (ECF No. 18, PageID # 151); *see also* Pl.'s Opp. to Mot. Dismiss, 12 (ECF No. 14, #114). Judge Hornby also "accept[ed] the plaintiffs' stipulations of dismissal as to Counts I and IV." Decision & Order, 4. Consequently, at this time the sole remaining claim is a state law sexual assault claim against Gaudette (Count V).