UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| LAWRENCE ROLAND OUELLETTE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 2:16-cv-00053-LEW |
| NORMAN GAUDETTE, ROGER BEAUPRE, and THE CITY OF BIDDEFORD, | ) ) ) ) | |
| Defendants | ) | |

## **ORDER**

Plaintiff Lawrence Ouellette alleges Defendant Norman Gaudette sexually assaulted him in 1987 and 1988, when Mr. Ouellette was a minor and Mr. Gaudette was a police captain employed by the City of Biddeford. Plaintiff alleges Defendant Roger Beaupre, then Chief of the Biddeford Police Department, was on notice of and deliberately indifferent to Officer Gaudette's conduct, and thereby caused Plaintiff constitutional harm.

Plaintiff alleges the deprivation of his right "of liberty to bodily integrity, including but not limited to a freedom from sexual abuse by BPD police officers." Am. Compl. ¶ 41. Plaintiff also asserts a *Monell* claim[1] against the City of Biddeford based on failure to

---

[1] *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658 (1978).

investigate, train and/or supervise, or "tacit authorization," arising out of a "widespread deliberately indifferent custom, habit, practice and/or policy." *Id.* ¶¶ 44-45.[2]

Although a § 1983 constitutional claim against Mr. Gaudette is time barred, the First Circuit Court of Appeals has reasoned that the § 1983 claims against Mr. Beaupre and the City of Biddeford may not be so barred. This apparently depends on what the *jury* decides was Mr. Ouellette's duty to diligently investigate his claims against Defendants. *Ouellette v. Beaupre*, 977 F.3d 127, 145 (1st Cir. 2020) ("[A] reasonable jury could find that Ouellette had no duty to diligently investigate his claims against appellees prior to 2015 …."). Accordingly, the First Circuit vacated my award of summary judgment based on the statute of limitation and remanded for further proceedings. *Id.* at 146.

On January 28, 2021, I conducted a telephone conference with the parties to discuss whether there is a need for supplemental briefing and instructed the parties to engage in the meet and confer process and then, if a party wanted leave to expand the briefing, file a Local Rule 56(h) report concerning the same. On February 5, 2021, the City and Mr. Beaupre memorialized the parties' respective positions in a Pre-Filing Conference Memorandum (ECF No. 164). They report an intention not merely to revisit the issues addressed but left unresolved in the prior round of summary judgment practice, but also to expand considerably the legal memoranda and summary judgment record. After review of the original summary

---

[2] Plaintiff asserts that Chief Beaupre "knew or had reason to know . . . of Gaudette's sexual abuse of minors and did nothing about it and/or covered it up." Pl.'s MSJ Resp. at 6. In the Amended Complaint this is stated as Beaupre "took no steps to protect" Plaintiff and essentially steered internal affairs investigations in a way that "allow[ed] Officer Gaudette to remain in his position … prior to [when] he sexually assaulted Ouellette." Am. Compl. ¶ 24. Plaintiff also describes Beaupre's omission as "failure to investigate complaints … and/or supervise." *Id*. ¶ 36.

judgment papers and the Conference Memorandum, leave to file a supplemental summary judgment motion is denied. The outstanding issues are addressed below based on the record the parties submitted during the earlier summary judgment briefing cycle.

## Color of Law

Defendants argued Officer Gaudette was not acting under color of state law when he engaged in the alleged abuse of Plaintiff. Motion at 6-12. The question appears to boil down to whether the authority of Gaudette's office was in some means instrumental in the abuse.[3]

Defendants observe that the alleged conduct could not reasonably be considered within the scope of official duties. Furthermore, they say the record evinces sexual abuse exclusively while Gaudette was off duty and they note that Plaintiff testified that the encounters were not the product of physical intimidation.[4]

---

[3] The First Circuit has described the inquiry as follows:

> An officer who abuses or exceeds his recognized authority may be acting under color of law if, "at the time in question, [he] purposes to act in an official capacity or to exercise official responsibilities pursuant to state law." *Id.* Although the subjective reactions of the victim may have some relevance, "the primary focus of the color of law analysis must be on the conduct of the police officer," *Barreto–Rivera*, 168 F.3d at 47, and whether it "related in some meaningful way either to the officer's governmental status or to the performance of his duties," *Martinez*, 54 F.3d at 987.

*Zambrana-Marrero v. Suarez-Cruz*, 172 F.3d 122, 126 (1st Cir. 1999).

[4] Although a § 1983 claim against Mr. Gaudette is time barred, still Plaintiff must prove that Mr. Gaudette subjected him to a constitutional deprivation in order to lay the groundwork for his claims against the other defendants. *Ouellette v. Beaupre*, 977 F.3d 127, 145 (1st Cir. 2020) ("[I]f Ouellette is to prevail on his § 1983 claims against appellees, he will have to convince a jury to make a preliminary factual finding that Gaudette violated his constitutional rights."). This groundwork will need to include evidence that Gaudette acted under color of law.

Defendants argue that Plaintiff cannot prove he was compelled[5] to engage in sexual acts with Gaudette when Gaudette was on duty and that this factor deserves greatest weight in the color of law inquiry. Defendants contend these encounters were what the First Circuit refers to as "personal frolics" under this legal rubric and not exercises of police authority. *Martinez v. Colon*, 54 F.3d 980, 987 (1st Cir. 1995). The record evidence suggests circumstances that blur the line between the color of law and the First Circuit's "personal frolic" categorical alternative. I am not inclined to take this decision away from the jury. This conclusion seems also to be in league with the First Circuit's preference to have the jury effectively resolve the applicability of the statute of limitations. In the wake of that thinking, only a remarkably one-sided factual record supporting Defendants' arguments would result in a grant of summary judgment on the remaining, much more nuanced, legal issues. The record is decidedly a mixed bag. The color of law issue and the existence of an underlying deprivation depend on the resolution of disputed facts, which naturally will be left for the jury to settle.

### Deliberate Indifference & Causal Connection

Defendants argued that "even if" Plaintiff could show that Mr. Gaudette deprived him of a constitutional right by having sexual relations with him, the evidence will not demonstrate a "strong causal connection" proving that Mr. Beaupre's alleged inaction "led inexorably to

---

[5] The First Circuit characterized the underlying cause of action as one that arises under the substantive component of the Due Process Clause. *Ouellette v. Beaupre*, 977 F.3d 127, 133 & n.4 (1st Cir. 2020) (citing *Martínez v. Cui*, 608 F.3d 54, 58 (1st Cir. 2010) (stating that a claim alleging infringement by a state officer of the right to bodily integrity is "appropriately characterized ... as a Fourteenth Amendment substantive due process claim")). Defendants' briefing does not adequately address what significance compulsion has in relation to Plaintiff's burden of proving an underlying substantive due process deprivation. However, I am not persuaded that Defendants deserve a second opportunity to address the issue in a second/supplemental summary judgment proceeding. Defendants have not waived the right to advance the issue at trial.

the constitutional violation." Motion at 12-13. Defendants also deny that Gaudette had notice of alleged abuse, let alone actual abuse. *Id.* They said it thus: "There simply is no evidence that during the years at issue anything happened 'to put … supervisors on notice that [Gaudette] presented a substantial, unusually serious, or grave risk' of abusing Ouellette." *Id.* at 13 (quoting *Ramirez-Lluveras v. Rivera-Merced*, 759 F.3d 10, 21 (1st Cir. 2014)). The gist of this defense appears to be that the evidence might raise a negligence question, but that the kind of "notice" that Chief Beaupre supposedly had would not support a deliberate indifference finding related to an underlying substantive due process harm.[6]

In the event an underlying substantive due process deprivation exacted under color of law is found by the jury there is a genuine issue whether Mr. Beaupre's conduct can be deemed deliberate indifference on the part of a supervisory officer. This will depend, predominantly, on what the jury makes of the evidence concerning *prior* reports of misconduct by Mr. Gaudette. Concerns about the admissibility or weight to be assigned to prior reports concerning a different officer and alleged later reports against Mr. Gaudette are matters I will address in limine, during trial, and/or in the jury charge; they do not necessitate a summary judgment ruling.[7] And given the expansive range of issues now to be resolved by the jury,

---

[6] Evidently, this particular issue is one that Defendants would most like the chance to expand upon, stating they would rely on deposition transcripts of more than twenty witnesses and related exhibits. Conference Memorandum at 6.

[7] "Under 42 U.S.C. § 1983 ... [a]bsent participation in the challenged conduct, a supervisor can be held liable only if (1) the behavior of his subordinates results in a constitutional violation and (2) the supervisor's action or inaction was affirmatively linked to the behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence of the supervisor amounting to deliberate indifference." *Bisbal–Ramos v. City of Mayaguez*, 467 F.3d 16, 24 (1st Cir. 2006) (citation and internal quotation marks omitted). In the Conference Memorandum, Defendants express the worry that Plaintiff is attempting to assert a broader "duty to protect" claim based on some more generalized "propensity to do harm" other than constitutional harm. Conference Memorandum at 4-5, citing Am. Compl. ¶ 22. If that is Plaintiff's

the parties all may reasonably anticipate that my rulings on admissibility of evidence will be commensurately capacious.

## Qualified Immunity

Mr. Beaupre previously argued the law was not clearly established in 1987/88 that his after-the-fact referral of reports made against Mr. Guadette "to outside authorities for investigation" could be deemed inadequate such that he would have understood he was depriving an alleged victim of a constitutional right. Defendants' Summary Judgment Reply at 7. In his words: "There is no evidence that, at any relevant time, Beaupre did anything that a reasonable official … would have understood to violate clearly established law …." Motion at 16. According to Defendants, the record shows not only that Mr. Beaupre had no contemporaneous notice of alleged abuse undertaken by Mr. Gaudette, but also that when he eventually heard of an allegation against Mr. Gaudette he referred the matter to the District Attorney, the Attorney General, and internal affairs for investigation. *Id.* at 16-19.

Plaintiff says this is not an accurate depiction of the record; that Mr. Beaupre never investigated prior claims two other minors made against Mr. Gaudette before Gaudette abused Plaintiff, and that Mr. Beaupre did not investigate prior similar accusations related to another officer (reflecting, in Plaintiff's view, both Beaupre's subjective indifference and a municipal custom or policy). Summary Judgment Response at 15, citing POSMF ¶¶ 115-116 & PSAMF ¶¶ 17-32.

---

intention, I do not read paragraph 22 of the Amended Complaint to assert a freestanding claim or to give notice of such a theory, and the actual counts set forth in the Amended Complaint are clear that they concern underlying *constitutional* harm associated with invasion of bodily integrity. In other words, the pleadings do not state the claim Defendants worry about.

6

The application of qualified immunity doctrine in this hazy factual context does not point to an obvious outcome.[8] On one version of the facts, the jury will need to consider the reasonableness of Mr. Beaupre's disregard of reports made by particular minors against particular officers, as relayed to him by those officers who received the reports. Furthermore, no reasonable officer would question the proposition that the abuse of police power to sexually assault a person (minor or adult) deprives that person of a constitutional right. Given these considerations, genuine issues of material fact underlie the qualified immunity defense and, consequently, summary judgment is not warranted.

## Municipal Liability

Defendants argued the City cannot be liable unless some municipal official other than Chief Beaupre (they do not specify who) had notice of an issue that would justify municipal liability. Motion at 14. Summary judgment is not warranted as to this issue because then Chief Beaupre's alleged deliberate indifference, if found, reasonably could be deemed an act or omission by the municipality's policy-making officer.

---

[8] As explained by the First Circuit:

> The "clearly established" inquiry as to supervisors is bifurcated and is satisfied only when "(1) the subordinate's actions violated a clearly established constitutional right, and (2) it was clearly established that a supervisor would be liable for constitutional violations perpetrated by his subordinates in that context." *Camilo-Robles v. Hoyos*, 151 F.3d 1, 6 (1st Cir. 1998). If the constitutional right and the availability of supervisory liability that underlie a plaintiff's § 1983 claim are both clearly established, the qualified immunity analysis "reduces to the test of objective legal reasonableness." *Id*. at 6. Under this latter test, we ask "whether, in the particular circumstances confronted by [the] appellant, [the] appellant should reasonably have understood that his conduct jeopardized those rights," whether through deliberate indifference or otherwise. *Id*. at 7. This question involves merits-like analysis but is analytically distinct and confined to the qualified immunity inquiry. *Id.* at 6-7.

*Penate v. Hanchett*, 944 F.3d 358, 366 (1st Cir. 2019).

## Conspiracy

In their Conference Memorandum, Defendants say they would like to file a second summary judgment motion to foreclose a conspiracy theory that Plaintiff agrees is no longer stated in the Amended Complaint. Plaintiff's concession is noted. Summary judgment proceedings are not needed to address an abandoned theory of relief.

## CONCLUSION

For the foregoing reasons, summary judgment is DENIED with respect to the issues not resolved in the prior Order on Defendants' Roger Beaupre and the City of Biddeford's Motion for Summary Judgment. Defendants' request for leave to file a second or supplemental summary judgment motion is DENIED.

**SO ORDERED.**

Dated this 12th day of February, 2021.

                                                      /s/ Lance E. Walker  
                                            UNITED STATES DISTRICT JUDGE