UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

LAWRENCE OUELLETTE,

            Plaintiff

v.                                                      Case No.: 2:16-cv-00053-LEW

NORMAN GAUDETTE, CITY OF
BIDDEFORD and ROGER BEAUPRE,

            Defendants

## DEFENDANT NORMAN GAUDETTE'S MOTION FOR SEPARATE TRIALS

Defendant Norman Gaudette hereby moves under Fed. R. Civ. P. 42(b) for separate trials on the sexual assault claim against Gaudette individually (Count 5) and the municipal liability claims against the City of Biddeford and Chief Roger Beaupre (Count 2, 3, and 4).[1] As explained below, much of the evidence that Ouellette plans to offer to prove municipal liability will be inadmissible against Gaudette. If admitted, that evidence will effectively deprive Gaudette of fair trial. Separate trials are therefore necessary to avoid unfair prejudice.

Rule 42(b) provides that, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). Bifurcating a civil rights trial into an initial phase on the individual officer's liability and a second phase on

---

[1] Count 1, which alleged a § 1983 claim against Norman Gaudette, was voluntarily dismissed. Decision and Order on Plaintiff's Motion to Amend Complaint and Order for Further Briefing (Dkt. 18) at 15.) Because the distinction between the official-capacity claim and individual capacity claim against Chief Beaupre are immaterial to this motion, Counts 2 through 4 are simply referred to as the municipal liability claims, even though Count 2 is an individual capacity claim against Chief Beaupre.

Also, this motion discusses what Gaudette expects that Ouellette will offer for evidence and for evidentiary theories and arguments at trial on the municipal liability claims. This discussion should not be viewed as an agreement by Gaudette that Ouellette's claims against the municipal defendants are well founded or that the evidence on which Ouellette relies is in fact admissible.

municipal liability is "a classic exercise of the trial court's management discretion[.]" *Lund v. Henderson*, 807 F.3d 6, 12 (1st Cir. 2015). Courts regularly do so to ensure that the individual officer is not unfairly prejudiced by evidence that is admissible on the municipal liability claim but inadmissible on the individual liability claim, and also to promote judicial economy by potentially avoiding the need for a lengthy trial on municipal liability if the plaintiff fails to establish a constitutional violation. *See, e.g.*, *Lachance v. Town of Charlton*, 368 F. Supp. 3d 231, 244 (D. Mass. 2019) (deferring consideration of a municipal defendant's summary judgment motion until after the trial on the claims against the individual officer); *Bradford v. City of Chi.*, 2019 U.S. Dist. LEXIS 178832, at *9 (N.D. Ill. Oct. 16, 2019) (bifurcating where the trial on the *Monell* claim will include evidence of similar misconduct dating years before the incident); *Hutchins v. McKay*, 285 F. Supp. 3d 420, 431 (D. Mass. 2018) (bifurcating where prior bad act evidence would unfairly prejudice the individual officer); *Adams v. City of Bos.*, 2008 U.S. Dist. LEXIS 68345, at *3 (D. Mass. Sep. 9, 2008) (ordering separate trials after observing that "[b]ifurcation is the usual course in civil rights actions like this one, although a plaintiff is, of course, free to proceed against a municipality directly without naming the individual officers as defendants"). The Court should do so here.

Ouellette's claim against Gaudette centers on an alleged occurrence between him and Gaudette in a camper in Naples, Maine in 1987. Ouellette cannot remember what happened but believes that Gaudette sexually assaulted him. To establish municipal liability, and to avoid the municipal defendants' statute of limitations defense, Ouellette plans to offer evidence purportedly showing:

2

(1) That the municipal defendants received a report that Gaudette abused Michael Frenette in mid-1980s and that Chief Beaupre buried the report to ensure that Gaudette would not be investigated (Plaintiff's Statement of Material Facts (PSMF) ¶¶ 17- 24);

(2) That the municipal defendants received reports that Gaudette abused Robert Kalex in the early 1980s and that the municipal defendants again acted to ensure that Gaudette would not be investigated (PSMF ¶¶ 25-32);

(3) That the municipal defendants had reason to know that another Biddeford Police Department officer, Stephen Dodd, was molesting teenagers while serving as a police officer yet failed to investigate those allegations (PSMF ¶¶ 33-51);

(4) That the Biddeford Police Department destroyed records about sexual abuse allegations against Dodd and Gaudette (PSMF ¶¶ 52-68);

(5) That the Biddeford Police Department failed to follow its own procedures for handling the reports of sexual abuse against Gaudette and Dodd (PSMF ¶¶ 69-75); and

(6) That Ouellette only learned of the alleged cover-up in 2015 when he saw statements in social media and in newspaper articles about sexual abuse by Biddeford Police Department officers, statements by other alleged victims of Dodd and Gaudette, and a written statement by Robert Devou (a previous detective at the Biddeford Police Department) detailing the alleged prior reports concerning Gaudette (PSMF ¶¶ 1-9).

This evidence is inadmissible against Gaudette and, if admitted, will be so flagrantly prejudicial to deprive Gaudette of a fair trial. Fed. R. Evid. 402, 403, 404(b), and 802. The jury will inevitably view the prior reports about Gaudette as evidence of bad character and predisposition, which is improper under both Rule 403 and Rule 404(b). The prohibition on predisposition evidence dates as far back as the English cases of the seventeenth century. *United States v. Castillo*, 140 F.3d 874, 881 (10th Cir. 1998); *see also Young v. State*, 106 So. 3d 775, 786 (Miss. 2012) (Dickinson, J., dissenting) ("This evidentiary tactic – sometimes called 'propensity' or 'he did it before, he probably did it this time' evidence – has been forbidden since at least 1692, just forty-two years after the Mayflower sailed." (citing *Harrison's Trial,* 12 How. St. Tr. 834 (Old Bailey 1692))). And for good reason: predisposition evidence tends to "weigh too much with the jury and to so overpersuade them as to prejudge" the litigant and deny him or her a fair trial. *Michelson v. United States*, 335 U.S. 469, 476 (1948). Alerting the jury that others have accused Gaudette of sexual abuse will place "inevitable pressure on lay jurors to believe that 'if he did it before he probably did so this time.'" *Gordon v. United States*, 383 F.2d 936, 940 (D.C. Cir. 1967), *cert. denied*, 390 U.S. 1029 (1968).

Likewise, evidence about Stephen Dodd's alleged abuse and the municipal defendants' alleged cover-up are all irrelevant to whether Gaudette abused Ouellette in 1987. Fed. R. Evid. 401, 402. Even worse, Ouellette will presumably offer evidence of the social-media-firestorm occurring in 2015 to establish that his § 1983 claims against the municipal defendants are not time-barred. *Ouellette v. Beaupre*, 977 F.3d 127, 145 (1st Cir. 2020) ("a reasonable jury could find that Ouellette had no duty to diligently investigate his claims against appellees prior to 2015, when the social media posts and press coverage first publicized Chief Beaupre and the City of

4

Biddeford's alleged deliberate indifference to the sexual abuse of minors by BPD officers, thus alerting Ouellette that their actions or inaction may have also been a cause of his injury"). Admitting this evidence will unfairly prejudice Gaudette by confusing the issues, exposing Gaudette to the risk of guilt by association, and contaminating the jury with unreliable and inflammatory statements made in social media posts and in newspaper articles.[2] Fed. R. Evid. 402, 403; *Bradford*, 2019 U.S. Dist. LEXIS 178832, at *9 (ordering separate trials where there the admission of misconduct by other officers created a "'real danger' that such evidence would 'contaminate the mind of the finder of fact,' and result in 'liability by association alone.'" (quoting *Ojeda-Beltran*, 2008 U.S. Dist. LEXIS 54116 (N.D. Ill. July 16, 2008)). More simply, the jury may conclude that birds of a feather flock together and that, with so many accusations made against Biddeford Police Department officers and the department itself, Gaudette probably committed the abuse alleged.

A mere limiting instruction cannot fix this damage. A limiting instruction is not a cure-all to prejudice; if it were, there would never be a need to bifurcate a trial. *United States v. Ford*, 839 F.3d 94, 110 (1st Cir. 2016) ("it is not clear the district court's limiting instructions were sufficient to curb its prejudicial effect"); *Huizar v. City of Anaheim (Estate of Diaz)*, 840 F.3d 592, 603 (9th Cir. 2016) ("if a limiting instruction was considered sufficient to cure all prejudice, there would be no need ever to bifurcate to avoid prejudice"); *United States v. Blakeney*, 942 F.2d 1001, 1031 (6th Cir. 1991) ("curative instructions do not cure all prejudicial problems"); *United States v. Conley*, 942 F.2d 1125, 1130 (7th Cir. 1991) ("[j]urors are not robots . . . and

---

[2] Of note, Gaudette is suing the Mainely Media, LLC and two of its reporters for printing articles featuring Gaudette's alleged sexual abuse of minors. *Gaudette v. Mainely Media, et al.*, CV-2015-0123 (York Cty. Super. Ct.). On August 14, 2019, the Superior Court (O'Neil, J.) denied the defendants' motion for summary judgment in part and concluded that Gaudette had provided sufficient evidence of actual malice to present the case to a jury.

can rarely consider evidence strictly for a single purpose to the exclusion of other, often more

obvious purposes."); *United States v. Garcia-Rosa*, 876 F.2d 209, 222 (1st Cir. 1989)  ("the

prejudice in this case was so severe and unfair that it cannot be remedied merely through a

limiting instruction. In fact, if limiting instructions could remedy all such errors, the government

would easily be able to circumvent Rules 404(b) and 403"); *United States v. Dean*, 722 F.2d 92,

95 (5th Cir. 1983) ("We do not suggest that instructions can cure all illness"); *United States v.

James*, 2007 U.S. Dist. LEXIS 39585, at *6 (E.D.N.Y. May 31, 2007) ("a limiting instructions is

not a cure-all to undue prejudice"); *State v. Works*, 537 A.2d 221, 223 (Me. 1988) (vacating a

conviction where evidence of a subsequent similar act was presented to the jury, even though the

jury was told to disregard the evidence). A limiting instruction would be especially inadequate

here. A full trial on the municipal liability claims will last at least two weeks, with most of the

evidence focused on the municipal defendants' handling (or alleged mishandling) of sexual

assault accusations levied against Gaudette and Dodd. A limiting instruction would, in effect,

require the jurors to ignore most their multi-week trial experience when considering the

individual claim against Gaudette, and to set aside their own notions about whether the

Biddeford Police Department had a policy or custom of deliberate indifference to sexual assault

allegations against police officers. And all of this is against the backdrop of the highly emotional

and sensitive topic of sexual assault. Thus, a mere limiting instruction cannot cure the damage

that will be caused by a consolidated trial.

Ouellette may argue that he intends to offer evidence of prior bad acts by Gaudette for

alternative purposes. But this says nothing about the prejudicial effect of the evidence of the

alleged misconduct by Stephen Dodd, the alleged cover-up by municipal defendants, or of the

social media campaign in 2015. As to prior bad acts evidence against Gaudette, there promises to be "substantial battles about the admissibility of much of this evidence" as the trial approaches. *Kitchen v. Burge*, 2012 U.S. Dist. LEXIS 158088, at *22 (N.D. Ill. Nov. 2, 2012). As *Kitchen* explained, "[q]uestions about the admissibility of this evidence also diminish the force of Plaintiff's assertion that much of the evidence relevant to prove the *Monell* claim will be admitted in any event as Rule 404(b) evidence against the individual defendants; the identification of other acts evidence pursuant to Rule 404(b), of course, has not yet been presented to, much less resolved by, the Court, and assumptions that all such evidence that the plaintiff will seek to admit will be introduced at trial are, as yet, unfounded." *Id.* The same can be said here.

If Ouellette offers prior bad act evidence for allegedly non-character purposes, there will be good reason to exclude it.[3] The alternative purposes for admitting Rule 404(b) evidence cannot be "chanted as pretext" to thwart the rule's goal of avoiding propensity evidence. *Young*, 106 So. 3d at 787 (Dickinson, J., dissenting). *See also State v. DeMass*, 2000 ME 4, ¶ 12, 743 A.2d 233 (holding that prior bad act evidence should have been excluded in a gross sexual assault trial where "the absence or presence of mistake was not at issue . . . nor was the absence or presence of opportunity. DeMass simply asserts that the alleged acts of abuse never took place"); *State v. Goodrich*, 432 A.2d 413, 417 (Me. 1981) (vacating a rape conviction where the State introduced evidence alluding to involvement with someone other than the alleged victim because the defendant had not placed identity or intent at issue). Plus, even if Ouellette could avoid Rule 404(b), the evidence would still be subject to Rule 403's balancing test. It is therefore

---

[3] Gaudette intends to file a separate motion in limine addressing other-act evidence with more specificity.

premature to assume that the Court will be admitting any prior bad act evidence against Gaudette.

Another problem with holding a consolidated trial is that Ouellette will be offering unsworn out-of-court statements from the 1980s and from 2015 against the municipal defendants. Some of those hearsay statements may be admissible against the municipal defendants to prove knowledge and a failure to investigate, or to establish the discovery rule, but they are still inadmissible on the separate issue of whether Gaudette assaulted Ouellette in 1987. Fed. R. Evid. 801, 802. Even if the Court allows Ouellette to admit some limited amount of other-act evidence against Gaudette, Ouellette will still need to present live witnesses who come to court and testify about their experiences; hearsay statements from the 1980s and from social media will not suffice.

The difference between the in-court and out-of-court statements will be substantial. For example, Ouellette's summary judgment filings assert that Chief Beaupre received reports in the 1980s that Robert Kalex and Michael Frenette each claimed to have been abused by Gaudette. Ouellette may also offer statements in social media and newspaper articles in 2015 to support his discovery-rule argument. In a trial on municipal liability, those out-of-court statements are possibly admissible without the need to call Kalex or Frenette as witnesses. In a trial on individual liability, however, Kalex's live-testimony (if allowed) will presumably be that his memory is "shot to shit," that he has no memory of being molested by Norman Gaudette, and that his statements from the 1980s are unreliable because of his use of drugs and alcohol during that timeframe. (Kalex Dep. 108:12-111:9, 117:17-25, 219:18-221:7.)  Similarly, Ouellette cannot call Frenette as a witness because Frenette now deceased. Holding a consolidated trial

will, in effect, offer Ouellette a back-door through which to offer inadmissible hearsay against Gaudette.

Whereas Gaudette will be substantially prejudiced by a consolidated trial, Ouellette will not be prejudiced by separate trials. A separate trial on individual liability will be comparatively simple. Indeed, it was argued in the companion case that "Gaudette's defense boils down to a simple point. He didn't sexually abuse Frechette when he was employed as a City of Biddeford Police Officer" and that the individual liability claim is so simple that Gaudette's defense "could be handled by any competent attorney." (Pl.'s M. to Disq. in 2:17-cv-172 at 9.) Although Ouellette may complain that separate trials will expose him to the burden of two trials, that is the case whenever separate trials become necessary to avoid unfair prejudice. Plus, the need for separate trials was foreseeable considering the circumstances discussed above. If the burden of separate trails was too great to tolerate, Ouellette was "of course, free to proceed against a municipality directly without naming the individual officer[] as [a] defendant[]." *Adams*, 2008 U.S. Dist. LEXIS 68345, at \*3.

Finally, ordering separate trials may enhance judicial economy. A trial on municipal liability will last for weeks and involve many witnesses spanning from Maine to Florida. Individual liability can probably be tried within a week and the trial will be limited to those claims and defenses alleged in the pleadings as to Count 5. If the jury rules for Gaudette, the municipal liability claims will fail, and the case will be over. *Hutchins*, 285 F. Supp. 3d at 431 ("[w]here a plaintiff does not prevail in his suit against the named officers, the *Monell* claim falls away"). Thus, ordering a separate trial on Count 5 has the real possibility of eliminating the need for a multi-week trial, enhancing judicial economy.

9

WHEREFORE, Defendant Norman Gaudette respectfully requests that the Court order a separate trial on Count 5, and order such other relief as the Court deems just.

Dated:  February 15, 2021

/s/ Gene R. Libby
Gene R. Libby, Esq., Bar No. 427

/s/ Tyler J. Smith
Tyler J. Smith, Esq., Bar No. 4526
Attorneys for Defendant, Norman Gaudette

LIBBY O'BRIEN KINGSLEY & CHAMPION, LLC
62 Portland Road, Suite 17
Kennebunk, Maine 04043
(207) 985-1815
glibby@lokllc.com
tsmith@lokllc.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2021, I electronically filed this document with the Clerk of the Court using the CM/ECF system which caused a copy of this document be served electronically to all parties and counsel of record.

Dated: February 15, 2021

/s/ Tyler J. Smith, Esq.
Gene R. Libby, Esq. (Bar No. 427)
Tyler J. Smith, Esq. (Bar No. 4526)
Attorneys for Defendant, Norman Gaudette
Libby O'Brien Kingsley & Champion, LLC
62 Portland Road, Suite 17
Kennebunk, ME  04043
glibby@lokllc.com
tsmith@lokllc.com
(207) 985-1815

10